IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MICHAEL J. BETARIE, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| -vs- | ) ) | Civil Action No. 14-1646 |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge.

## OPINION
### and
## ORDER OF COURT

Plaintiff Michael J. Betarie ("Betarie") brings this motion under 42 U.S.C. § 2412, the Equal Access to Justice Act ("EAJA"), seeking attorney's fees in the sum of $6,935.00. *See ECF Docket No.* [22].[1] After careful consideration, the Motion is granted, in part, as set forth more fully below.

The EAJA provides, in relevant part, that:

> [e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The EAJA is not a "loser pays" statute. *See Rhodes v. Astrue*, Civ. No. 8-53, 2011 WL 6372823 at * 2 (W.D. Pa. Dec. 20, 2011). Here, the Commissioner opposes the award of fees and costs on the ground that the position it advanced before this Court was

---

[1] In his Reply Brief, Betarie "acknowledged an error," indicating that a 10% reduction in billing is typical in negotiations. As such, he amended his request to one seeking $6,080.00 representing 32 hours worked. As stated below, however, I must address the reasonableness of the requested rates. Betarie is compelled to file an itemized list detailing the hours worked. The "32 hours" request is not accompanied by an itemization of what tasks comprise those hours. Accordingly, I will use the 36.5 hours originally submitted.

1

"substantially justified." In the alternative, the Commissioner urges that the fee requested is unreasonable.

(A) Substantially Justified

The Supreme Court has defined "substantially justified" under the EAJA as "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L.Ed.2d 490 (1988). It is the Government's burden to prove substantial justification. See *Cruz v. Comm'r. of Social Security*, 630 F.2d 321, 324 (3d Cir. 2010) (*citing Hanover Potato Prods., Inc. v. Shalala,* 989 F.2d 123, 128 (3d Cir. 1993)). Significantly, "[t]he government's position consists of both its prelitigation agency position and its litigation position." *Williams v. Astrue*, 600 F.3d 299, 302 (3d Cir. 2009). Thus, the government must prove: "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Cruz*, 630 F.3d at 324, *citing, Morgan v. Perry*, 142 F.3d 670, 684 (3d Cir. 1998). Merely because a claimant may prevail on the merits does not mean that the Government's position was not substantially justified. *Id.*, at 324-25, *citing, Morgan*, 142 F.3d at 684. "Rather, when deciding whether the government is substantially justified, courts should determine whether the government's position has a reasonable basis in both fact and law." *Id.*, at 324, *citing, Morgan*, 142 F.3d at 684.

Here the Commissioner contends that her position in this case was substantially justified. I disagree. This Court remanded in order for the ALJ to "consider whether Betarie's noncompliance with the recommendations of his providers was the result of his mental impairment and, therefore, a justifiable or reasonable refusal in light of his individual circumstances." *See ECF Docket No.* [20], p. 7.

(1) Reasonable Basis in Truth for the Facts Alleged

Turning to the first element of the *Morgan* test, I must assess whether the Commissioner's position had a reasonable basis in truth for the facts alleged. I find that it did

2

not. The Commissioner urges that the ALJ only mentioned Betarie's noncompliance with respect to evaluating his credibility. In fact, the ALJ repeatedly discussed Betarie's alleged noncompliance in the context of evaluating medical opinions. For instance, the ALJ acknowledges that Gary Yaquinto, M.A., diagnosed Betarie as having Bipolar I disorder and Intermittent Explosive Disorder, along with auditory hallucinations, mood swings, psychotic thoughts, paranoia, inappropriate behavior, irritability, and passive suicidal ideation. (R. 24-25). She further recognized that Yaquinto opined that Betarie would "often have difficulty with interacting with supervisors and coworkers during an eight hour work day [and] that the claimant would have difficulty managing in even a low stress work environment along with difficulty maintaining concentration / persistence / pace." (R. 24) Yet the ALJ accorded "limited weight" to Yaquinto's findings "[i]n particular, [because] the treatment history reveals the claimant to be non-compliant with the recommendations of his healthcare providers including refusing therapy, case management, and for much of the relevant period of time the recommendation to be prescribed mood stabilizers." (R. 25) The ALJ explicitly used Betarie's noncompliance as a factor in weighing a medical provider's opinion evidence. This was not limited to an evaluation of credibility.

Later in the Opinion, the ALJ again made clear her connection between the weight accorded to the opinions of Betarie's medical providers and his alleged noncompliance. She referenced her decision to accord "limited weight to the conclusions of Ms. Ankrom, Dr. Crabtree and Psychologist Yaquinto." (R. 35) First, she noted that Crabtree's July 25, 2010 medical source statement assesses Betarie to have "extreme limitations in his ability to 'make judgments on simple work-related decisions,' 'interact appropriately with the public,' and 'interact appropriately with co-workers,'" as well as "marked limitations as to his ability to interact with supervisors." (R. 35) Second, she acknowledged that Ankrom reported that Betarie "had a chronic mental illness or bipolar disorder, and was unable to hold gainful employment due to mood instability." (R. 36) Finally, she recounted Yaquinto's findings, which are set forth above.

3

She then stated "[o]verall, these conclusions of substantial and debilitating limitations are not supported by the full longitudinal record, and have been accorded limited weight for a number of reasons [:] [a]s has been discussed, the treatment history reveals the claimant to be non-compliant with the recommendations of his healthcare providers including refusing therapy, case management, and for much of the relevant period of time refusing the recommendation to be prescribed mood stabilizers." (R. 36)

Later, in connection with discussing Dr. Patel's opinion as stated in a medical source statement, the ALJ stated that she was "in disagreement with this doctor's opinion as to the claimant's abilities to maintain regular attendance and to be punctual within customary tolerance." (R. 38) Dr. Patel had indicated that Betarie's ability to maintain regular attendance and to be punctual within customary tolerance was "poor." (R. 38) In rejecting Dr. Patel's opinion, the ALJ stated, "this same doctor reported the claimant's symptoms to be of 'moderate' severity and *the above treatment history readily demonstrates the claimant to be non-compliant with many recommendations of his providers* and some examinations / reports demonstrate the claimant to have greater functionality than alleged." (R. 38) (emphasis added).

(2) Reasonable Basis in Theory for the Law Propounded

As to the second element, I find that the Commissioner does cite to some case law in support of its position that SSR 82-59 and 20 C.F.R. § 404.1530, § 416.930 only apply when an individual would otherwise be found to be under a disability - something that the ALJ did not find in Betarie's case. *See Meyers v. Comm'r of Soc. Sec.*, 456 Fed. Appx. 230, 232 (4th Cir. 2011); *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) and *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995). Yet I do not find these cases to be particularly compelling. Neither the *Myers*, *Holley* nor *Roberts* cases involved situations where the claimants allegedly suffered from mental impairments nor did they involve cases where the ALJs use noncompliance as a means of evaluating the weight of the claimant's treating physicians' opinions. Significantly, the *Roberts* court did state that SSR 82-59 applied only "to claimants who would otherwise be

disabled within the meaning of the Act." *Roberts*, 66 F.3d at 183. Yet it rejected application of SSR 82-59 in that case because "the Secretary did not premise the denial of [the claimant's] benefits solely on [her] failure to follow prescribed treatment." *Id.* The Court was not assured of the same here. *See ECF Docket No.* [20], p. 5 n. 3. Indeed, the ALJ rejected the opinions of Betarie's medical providers because of the history of noncompliance. Far more salient in this instance are those cases which deal with mental health issues and address the impact of mental impairments on compliance. *See Pates-Fires v. Astrue,* 564 F.3d 935 (8th Cir. 2008); *Clark v. Astrue*, Civ. No., 12-350 2013 WL 105017 at * 6-7 (S.D. Tex. Jan. 8, 2013) (finding that the ALJ did not adhere to SSR 82-59 which required him to determine whether the claimant had justifiable cause for his past failure to undergo prescribed treatment, and noting that "the fact that the ALJ's determinations regarding noncompliance were couched in terms of the RFC determination does not mean that the requirements of SSR 82-59 are inapplicable. It is true … that SSR 82-59 need not be followed when the ALJ considers the claimant's non-compliance only in connection with the claimant's credibility and with the severity of the claimant's subjective symptoms. However, in Clark's case, the ALJ did not consider his noncompliance merely in assessing the credibility of his subjective complaints."); *Jones v. Colvin*, Civ. No. 13-708, 2014 WL 582787 at * 15 (W.D. Ky. Feb. 13, 2014) (stating that "[a]t a minimum, SSR 82-50 required the ALJ to adequately develop the record to explain such noncompliance and the impact of her mental illness and limited access to medication. Ruling 82-59 expressly states that '[t]he claimant … should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment.' … Further, it notes that '[d]etailed questioning may be needed to identify and clarify the essential factors of refusal.' … The same section of SSR 82-59 continues to immediately advise that '[t]he record must reflect as clearly and as accurately as possible the claimant's … reason(s) for failing to follow the prescribed treatment.'")

Because I find that the Commissioner lacked a reasonable basis in truth for the facts alleged and lacked a reasonable basis in law for the theory it propounded I need not consider

5

whether a reasonable connection between the facts alleged and the legal theory advanced. I am mindful of the EAJA's purpose "to allow individuals … to fight back against unjustified governmental action, without fear that the high cost of doing so would make victory ultimately more expensive than acquiescence." *Handron v. Sec'y. Dep't. of Health & Human Services*, 677 F.3d 144, 145 (3d Cir. 2012) (citations omitted). Consequently, I find the award of fees in this instance would serve the purpose of the EAJA.

(B) Reasonableness of Fees

I turn now to the reasonableness of the requested fees. As stated above, Betarie now requests an award of attorney fees in the amount of $6,080, representing 32 hours at a billable hourly rate of $190. *See ECF Docket No.* [28]. However, the actual itemization of time which Betarie submitted, and to which the Commissioner objects, recorded 36.5 hours. Because the EAJA requires "an itemized statement from any attorney … representing … the party stating the actual time expended and the rate at which fees and other expenses were computed," 28 U.S.C. § 2412(d)(1)(B), I will use this calculation of time rather than the 32 hour figure, which appears to be one Betarie would have submitted as a product of negotiation. *See ECF Docket No.* [28], p. 2.

It is well established that:

> 'A party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable.' *Newell v. Comm'r of Social Security*, 121 Fed. Appx. 937, 939 (3d Cir. Jan. 25, 2005) (*quoting Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). The EAJA requires "an itemized statement from any attorney … representing the party stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B). A party opposing a fee award must support its challenge with an "affidavit or brief with sufficient specificity to give fee applicants notice" of the objections. *Rode*, 892 F.2d at 183. A fee award may not be "decreas[ed] … based on factors not raised at all by the adverse party." *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989). However, "[o]nce the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." *Rode*, 892 F.2d at 1183.

*Evans v. Astrue*, Civ. No. 12-850-LPS, 2013 WL 6869852 at *1 (D. Del. Dec. 30, 2013).

Here, the Commissioner objects to Betarie's request for compensation for "[r]eceipt and

6

review of Appeals Council decision; Review of file; conference w client re appeal to district court." The Commissioner contends that such "pre-complaint" work is not done "in connection with judicial proceedings" and as such is not compensable. This Court has already rejected such an argument. *See Wintemute v. Colvin*, Civ. No. 13-214E. 2014 WL 3845710, at *2 (W.D. Pa, Aug. 4, 2014) (stating that "time spen[t] in deciding to appeal is part of the civil action."). *See also Highsmith v. Barnhart*, 2006 WL 1582337 at * 4 (awarding 1.5 hours of fees for pre-complaint file review). Nevertheless, I find 2 hours to be excessive for reviewing a file that counsel should already be familiar with; for reviewing a standard letter from the Appeals Council, and for having a conversation with Betarie. As such, I will disallow 1 hour.

     Next, the Commissioner objects to 23.5 hours associated with: reviewing the file; issue identification; drafting and editing of the summary judgment brief; and correspondence to the client re: the same. *See ECF Docket No.* [22-2 I agree that the amount billed for preparing the Motion for Summary Judgment should be reduced. Betarie's counsel represents that her "usual hourly rate of work for a like nature is $450 per hour." *See ECF Docket No.* [22], p. 2, Ex. A. Counsel also represents that she has supervised the representation of well over 1,000 Social Security disability claimants over the past 5 years, and has assisted in the representation of over 200 claimants before various district courts. *Id.* The Court is entitled to expect some efficiency with that level of expertise. *See Highsmith*, 2006 WL 1582337 at * 6. The Motion for Summary Judgment and Brief are primarily devoted to fairly standard, noncomplex issues, such as the weight to be accorded to treating physicians and residual functional capacity assessments. Counsel such as Betarie's should be quite familiar with such issues and would not have to devote the equivalent of approximately three full work days to such matters. *See Cliggett v. Barnhart*, Civ. No. 5-583, 2006 WL 1648965 at *4 (E.D. Pa. June 9, 2006) (reducing fees awarded where the motion for summary judgment did not present any novel legal issues). I find that 15 hours to conduct legal research and prepare the brief is a more than adequate award of compensation. Accordingly, I will disallow 8.5 hours.

The Commissioner also objects to Betarie's request for 7 hours of compensation for the receipt, review and preparation of a response to the Commissioner's Response Brief. I find this to be excessive. A fair amount of Betarie's Reply Brief consists of a rehashing of the same arguments asserted in support of his Motion for Summary Judgment. I find that 4 hours is a generous amount of time devoted to the task. Consequently, I will disallow 3 hours.

Finally, the Commissioner takes issue with 1.25 hours devoted to "[r]eceipt and review of the FDC Opinion and Order remanding case to Commissioner. Correspondence to client re same." *See ECF Docket No.* [2-2]. If Betarie were seeking 1.25 hours solely for the purpose of reviewing the Opinion, I might agree with the Commissioner that the time expended was excessive. The Opinion was limited to discussion of one issue. Yet time was accorded for drafting correspondence to the client. A client cannot be expected to digest legal issues in as swift a manner as counsel and the Court must presume that time was taken to explain the ruling and its consequences to Betarie. As such, I will allow the full 1.25 hours of time assigned to this task.

The Commissioner has not objected to the hourly rate of $190.00. I have disallowed 12.5 hours, as set forth above. Consequently, Betarie shall be awarded compensation for 24 billable hours at a rate of $190 per hour, or $4,560.00. An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL BETARIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Civil Action No. 14-1646 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge.

### **ORDER OF COURT**

Therefore, this ___ day of February, 2016, it is ORDERED that Plaintiff's Motion for Attorney's Fees Under the Equal Access to Justice Act (Docket No. [22]) is granted in part and denied in part as follows: Plaintiff Michael Betarie is awarded attorney's fees under the EAJA in the amount of $4,560.00 as more fully set forth above.

BY THE COURT:

<u>/s/ Donetta W. Ambrose</u>
Donetta W. Ambrose
United States Senior District Judge